November Term, 1880.

CASE No. 987.

CLAWSON v. HUTCHINSON.

1. The act of 1869 (*Gen. Stat.* 497, § 2,) authorized a judge at chambers to vacate an erroneous judgment, but since the adoption of the code of procedure, that authority has been taken away under the terms of Section 417.

2. A Circuit judge has now no power at chambers to vacate a judgment as erroneous and order a trial *de novo*, upon the merits, as in this case, where the motion was based upon the ground that after-discovered evidence showed payment.

Before HUDSON, J., Sixth Circuit, October, 1880.

This case is sufficiently stated in the opinion. See, too, *Clawson* v. *Hutchinson*, 11 *S. C.* 323.

*Messrs. J. H. Rion* and *G. W. S. Hart*, for appellant.

*Messrs. J. S. R. Thomson* and *C. E. Spencer*, contra.

March 8th, 1881. The opinion of the court was delivered by

SIMPSON, C. J. This was a motion to vacate an alleged erroneous judgment and for a trial *de novo*. It was made before Judge Hudson at chambers. The judge states that he was satisfied, upon the showing made, that the judgment was erroneous and should be set aside, but that he had no jurisdiction at chambers in such case, referring to *Charles* v. *Jacobs*, 5 *S. C.* 348. He therefore refused the motion.

The case here has been argued in part on both sides as if it involved the question whether or not, in point of fact, the judgment was erroneous. We do not understand that the appeal brings up that question. The motion below was made upon after-discovered evidence.

The Circuit judge seemed to be satisfied with the showing, and, as has already been stated, declined the motion, not upon the

ground of failure of proof, but because the motion was made at chambers.

The sole question, then, in the appeal, is this: Can a Circuit judge hear and determine, at chambers, a motion of this kind? We propose to confine ourselves to this legal question.

The practice of granting new trials in cases tried before a jury is of very ancient origin, and is a very important branch of our jurisprudence. As is said by Mr. Blackstone: " In the hearing at a trial the ablest judge may mistake the law and misdirect the jury, and the jury, although composed of the most intelligent and best-intentioned men, may bring in a verdict which they themselves, upon cool deliberation, would wish to reverse." In the absence of the power to grant new trials, much inconvenience would result and much injustice be done. In all countries, therefore, where the law is properly administered, this power is lodged somewhere, and where wisely exercised serves to remedy many defects in the administration of justice. In our state, before the adoption of the constitution of 1868, this power belonged to the Appeal Court, the highest judicial tribunal in the state, and it was always exercised by that court with scrupulous justice to opposing litigants. The constitution of 1868, however, in directing the re-organization of the judicial system of the state, constructed the Supreme Court upon a somewhat different basis, and limiting its powers to some extent, when compared to the old court, confined its jurisdiction, except as to some matters original, to the correction of errors of law in cases at law, and to appeals in cases in chancery; the exercise of its powers within this limit being restricted to reversing, affirming or modifying orders, decrees and judgments below.

This court, therefore, has no power to grant new trials, except as incidental to the correction of errors. Hence, upon the adoption of the constitution of 1868, it became necessary for some new legislation upon this subject. Accordingly, an act was passed in 1868 upon the subject of new trials. That act invested the Circuit Courts of the state with the power to grant new trials. There is nothing said in the act as to the mode and manner of procedure, but the power is full and complete, and it exists in all cases where a jury trial has been had, and for reasons for which

new trials have been usually granted in the courts of law of the
United States. In this act, however, the power is conferred
upon the Circuit Courts. Such being the fact, it follows that a
Circuit judge could derive no authority to exercise this power
out of court. In 1869 a second act was passed. This act pro-
vides for vacating erroneous judgments and for granting
trials *de novo* by the presiding judge of the Circuit when the
proof furnished is satisfactory to him that this should be done.
Neither is there anything said in this act as to the mode and
manner of procedure, or as to the place where this power is to
be exercised, but it is conferred upon the presiding judge of the
Circuit. And it would seem, from the language used, that it was
intended to be exercised only after judgment or decree rendered,
and after the case had been disposed of and ended before some
other tribunal.

In these two acts a distinction is drawn between the court and
the judge. In the one the power is lodged with the court, in the
other in the presiding judge of the Circuit, acting separately and
apart from the court.

Now, if there had been no other legislation upon this subject
since these acts, there could hardly be a doubt that while a pro-
ceeding, instituted under the act of 1868, for a new trial, could
only be heard in open court, yet a similar proceeding, under the
act of 1869, might be heard by the presiding judge of the Cir-
cuit at any point he might designate, and either at chambers or
in court, as he might see proper.

The only fact that could throw any doubt around this matter
is that the term "presiding" is used in the act of 1869 in refer-
ence to the judge. This, by a strained construction, might be
interpreted to mean that this power is conferred upon a judge
only when presiding in open court. This construction, however,
would be too limited and narrow. It is hardly to be supposed
that the general assembly meant this, especially as the act of 1868
had already conferred this power upon the Circuit Courts.

But legislation on this subject did not stop with these two acts.
In 1872 the revised statutes were enacted, the whole being incor-
porated in one general statute. In that statute the acts of 1868
and 1869 above were re-enacted and incorporated as Sections 2

and 4 of Chapter CV., Revised Statutes, 497. The code was also adopted as a part of that act. And in Sections 288, 289 and 417, certain other provisions are made in reference to new trials, which must now be considered as bearing upon the question involved here.

Sections 288 and 289 seem to have been intended to meet cases after verdict but before judgment, and where the necessity for a new trial grew out of facts and circumstances immediately in connection with the trial, such as misdirection, surprise, insufficiency of evidence, or excessive damages, and such like causes. Under the first section a motion is permitted and authorized to be made upon the minutes of the judge who tried the cause, and at the term when tried; and in Section 289 to be made upon a case or exceptions at some subsequent term as the judge might direct, both to be made in open court. Neither of these sections interfered with or disturbed in any way the powers conferred upon the presiding judge or the Circuit Courts respectively by the acts of 1868 and 1869—they provided for cases untouched by these acts. If legislation had stopped at this point there still would have been no doubt as to the question now before the court, but Section 417 of the code presents a new feature. That section provides that motions may be made to a judge or justice out of court, except for a *new trial upon the merits.* This language, when transposed, means that a motion for a new trial upon the merits, shall not be made before a judge or justice out of court. This is prohibitory, emphatic and imperative. If it applies to the act of 1869, or to the case now under consideration, as being made upon the merits, it settles the question.

Does it limit and control the act of 1869? It follows that act in the order of position in the revised statutes. It occupies an independent place, and is general in its terms, and it would seem that all provisions in conflict with it must give way. More than this, inasmuch as, according to the construction we have given the enactments on this subject, the act of 1869 is the only act which at any time authorized a judge to hear a motion for new trial out of court, either upon the merits or otherwise, this section must have been intended expressly to repeal so much of that act as allowed motions of this kind to be heard upon the merits out

of court; otherwise this section would have been unnecessary and useless.

The conclusion of the court is, that while the presiding judge of the Circuit, under the act of 1869, had the power to hear and determine a motion for a new trial, either on the merits or otherwise, at chambers or in open court, as he saw proper, before the adoption of the code with Section 417, that since that time when the motion is made upon the merits, at chambers, his power has ceased by virtue of that section. Was this motion made upon the merits? These terms are not very definite, and we have been unable to find a case in which they have been distinctly interpreted; but, without this, it is safe to say, in general terms, that they include matters of substance as contra-distinguished from mere forms and irregularities.

The application below was made on the ground of after-discovered evidence, showing, it is claimed, payment. Is payment, as a defence, mere form, or is it substance? Payment goes to the gist of the action, and certainly involves the merits. Besides, Mr. Wait, pp. 396–400, embraces motions on after-discovered evidence among the motions upon the merits.

The case of *Charles* v. *Jacobs*, 5 *S. C.* 348, was a motion to vacate an erroneous judgment and for a trial *de novo*. The court held that as the motion was substantially a motion for a new trial, the Circuit judge had no power, at chambers, to hear it. In that case the error was apparent on the record; the jury had made a mistake in the computation of the amount and interest due upon the instrument sued on. How far a Circuit judge may grant orders at chambers looking to the correction of mistakes apparent on the record, but still retaining the judgment so far as correct, is not involved here. The motion below was not of that kind.

The order is affirmed and the appeal dismissed.

McIver and McGowan, A. J.'s, concurred.